UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE WINFIELD COLLECTION LIMITED,

    Plaintiff-Counter Defendant,

v.

GEMMY INDUSTRIES CORPORATION,

    Defendant-Counter Plaintiff.

**ORIGINAL**

Civil Action No. 02-cv-40249

Honorable Paul V. Gadola




ROBERT C.J. TUTTLE (P25222)
JOHN E. NEMAZI (P33285)
ROBERT C. BRANDENBURG (P28660)
Brooks & Kushman, PC
1000 Town Center
Twenty-Second Floor
Southfield, Michigan  48075
Telephone:  248-358-4400
Facsimile:  248-358-3351

*Attorneys for Plaintiff-Counter Defendant*
*The Winfield Collection Limited*

RICHARD W. HOFFMANN (P42352)
Warn, Burgess & Hoffmann, PC
691 North Squirrel Road
Suite 140
Auburn Hills, Michigan  48326
Telephone:  248-364-4300
Facsimile:  248-364-4285

JAMES G. FLAHERTY
Anderson Byrd Richeson Flaherty & Henrichs
216 S. Hickory, PO Box 17
Ottawa, Kansas  66067
Telephone:  785-242-1234
Facsimile:  785-242-1279

*Attorneys for Defendant-Counter Plaintiff*
*Gemmy Industries Corporation*

**DEFENDANT GEMMY INDUSTRIES CORPORATION'S
MOTION FOR SUMMARY JUDGMENT**



Defendant, Gemmy Industries Corporation, hereby moves for an Order granting Summary Judgment that it does not infringe any protectable elements of Plaintiff, The Winfield Collection LTD's, copyrighted pattern.

Grounds supporting this Motion are set forth in the accompanying Brief in Support.

Pursuant to Local Rule 7.1, counsel for Plaintiff was contacted seeking concurrence in the relief requested in this Motion, which concurrence was not obtained.

Respectfully submitted,

by _____

RICHARD W. HOFFMANN (P42352)
JOSEPH G. BURGESS (P41621)
Warn, Burgess & Hoffmann, PC
691 North Squirrel Road, Suite 140
Auburn Hills, Michigan  48326
Telephone:  248-364-4300
Facsimile:  248-364-4285

JAMES G. FLAHERTY
Anderson Byrd Richeson Flaherty & Henrichs
216 S. Hickory, PO Box 17
Ottawa, Kansas  66067
Telephone:  785-242-1234
Facsimile:  785-242-1279

*Attorneys for Defendant-Counter Plaintiff Gemmy Industries Corporation*

Dated:  August 29, 2003

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE WINFIELD COLLECTION LIMITED,

    Plaintiff-Counter Defendant,

v.                              Civil Action No. 4:02-cv-40249

GEMMY INDUSTRIES, CORPORATION,        Honorable Paul V. Gadola

    Defendant-Counter Plaintiff.

---

### CERTIFICATE OF SERVICE

    The undersigned hereby certifies that DEFENDANT GEMMY INDUSTRIES CORPORATION'S MOTION FOR SUMMARY JUDGMENT; BRIEF IN SUPPORT OF and CERTIFICATE OF SERVICE were served on the following this 29th day of August 2003 first by placing same in an envelope, postage fully prepaid to the following and then depositing in the United States mail:

        ROBERT C. BRANDENBURG, Esq.
        ROBERT C.J. TUTTLE, Esq.
        JOHN E. NEMAZI, Esq.
        Brooks & Kushman, PC
        1000 Town Center
        Twenty-Second Floor
        Southfield, Michigan 48075
        Facsimile: 248-358-3351
        *The Winfield Collection Limited*

               JUDITH H. BECKER

# ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE WINFIELD COLLECTION LIMITED,

    Plaintiff-Counter Defendant,

v.

GEMMY INDUSTRIES CORPORATION,

    Defendant-Counter Plaintiff.

Civil Action No. 02-cv-40249

Honorable Paul V. Gadola

| | |
|---|---|
| ROBERT C.J. TUTTLE (P25222)<br>JOHN E. NEMAZI (P33285)<br>ROBERT C. BRANDENBURG (P28660)<br>Brooks & Kushman, PC<br>1000 Town Center<br>Twenty-Second Floor<br>Southfield, Michigan 48075<br>Telephone: 248-358-4400<br>Facsimile: 248-358-3351<br><br>*Attorneys for Plaintiff-Counter Defendant*<br>*The Winfield Collection Limited* | RICHARD W. HOFFMANN (P42352)<br>Warn, Burgess & Hoffmann, PC<br>691 North Squirrel Road<br>Suite 140<br>Auburn Hills, Michigan 48326<br>Telephone: 248-364-4300<br>Facsimile: 248-364-4285<br><br>JAMES G. FLAHERTY<br>Anderson Byrd Richeson Flaherty & Henrichs<br>216 S. Hickory, PO Box 17<br>Ottawa, Kansas 66067<br>Telephone: 785-242-1234<br>Facsimile: 785-242-1279<br><br>*Attorneys for Defendant-Counter Plaintiff*<br>*Gemmy Industries Corporation* |

**BRIEF IN SUPPORT OF
DEFENDANT GEMMY INDUSTRIES CORPORATION'S
MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

| | | PAGE(S) |
|---|---|---|
| TABLE OF CONTENTS | | i-ii |
| TABLE OF AUTHORITIES | | iii |
| STATEMENT OF THE ISSUES | | iv |
| I. | INTRODUCTION | 1 |
| II. | PROCEDURAL BACKGROUND | 1 |
| III. | LEGAL STANDARD | 2 |
| | A. FACTUAL SUMMARY | 3 |
| |     1. Ownership Of Copyright | 3 |
| |     2. Access | 3 |
| |     3. Similarity - Or Lack Thereof | 3 |
| |     4. Independent Creation | 4 |
| IV. | SUMMARY JUDGMENT IS PROPER IN THE CONTEXT OF A COPYRIGHT CLAIM WHEN THERE IS NO DIRECT EVIDENCE OF COPYING, NO EVIDENCE OF ACCESS AND NO STRIKING SIMILARITY BETWEEN THE TO WORKS | 4 |
| V. | SUMMARY JUDGMENT IS PROPER IN THE CONTEXT OF A COPYRIGHT CLAIM WHEN THE COURT VIEWS THE REGISTERED WORK WITH THE DEFENDANT'S WORK AND CONCLUDES THAT THERE IS NOT SUFFICIENT SIMILARITY TO WARRANT A FINDING OF INFRINGEMENT | 6 |
| | A. NO PROTECTABLE ELEMENTS OF WORKS AS ASSERTED BY PLAINTIFF | 7 |
| |     1. Applying The First Step Of Kohus | 7 |
| |       a. Artistic Expression Of A Witch That Has Flown Astray And Then Smashed Into An Object | 8 |
| |       b. Face Hidden Element | 9 |
| |       c. Flowing Cape Element | 10 |
| |       d. Long Flowing Hair Element | 11 |
| |       e. Pointed Black Hat Element | 11 |
| |       f. Arms And Legs Spread Apart Element | 11 |
| |       g. Portion Of Broom Sticking Out Of The Back Of The Witch Under Cape Element | 12 |
| |       h. Striped Socks Element | 12 |
| |       i. Hair/Hat Hides Back Of Head Element | 12 |
| |       j. Cape Hiding Body Element | 12 |
| |       k. Boots Element | 13 |

### TABLE OF CONTENTS

**PAGE(S)**

l.  Hat Bent Element ................................................................. 13
m. Spread Of The Legs Element ............................................. 13
n.  Fingers Spread Out Element .............................................. 13
o.  Belt Buckle On The Shoes Element .................................... 14
p.  Broom Substantially Perpendicular Element ....................... 14
q.  3-Dimensional Element ...................................................... 14
r.  Line-by-Line Instructions .................................................... 14
s.  Diagrams On How To Put It Together ................................. 14
t.  3-D Diagrams ..................................................................... 14
u.  Letter Call-outs For Part ..................................................... 14

2.  Applying the Second Step Of <u>Kohus</u> ......................................... 15

a.  Lack Of Similarity In The Protectable Elements
Of Work - Substantial Dissimilarities .................................... 15

VI.     CONCLUSION AS TO COPYRIGHT INFRINGEMENT ............................ 19

VII.    CONCLUSION ............................................................................... 20

# TABLE OF AUTHORITIES

**CASES**                                                           **PAGE(S)**

Baker v. Seldon,
  101 U.S. 99 (1879)..................................................................................2

Bradbury v. Columbia Broadcasting Systems, Inc.,
  287 F.2d 478 (9th Cir. 1961) ...............................................................5

Glanzmann v. King,
  1988 WL 212507 (E.D.Mich. 1988) ...........................................................5

Granite Corp. v. United Artist Corp.,
  532 F.2d 718 (9th Cir. 1976) ...............................................................5

Jorgensen v. Epic/Sony Records,
  64 U.S.P.Q.2d 1208, 2000 WL 31119377 (S.D.N.Y. 2002) .......................5

Kohus v. Mariol,
  328 F.3d 848 (6th Cir. 2003) ...................................................2,6,7,10

Mattel, Inc. v. Azrak-Hamway Int'l, Inc.,
  724 F.2d 357 (2nd Cir. 1983) ...............................................................8

Mazer v. Stein,
  347 U.S. 201 (1954).............................................................................

Murray Hill Publications, Inc. v. ABC Communications, Inc.,
  264 F.3d 622 (6th Cir. 2001) ...............................................................2

Robert R. Jones Assoc., Inc. v. Nino Homes,
  858 F.2d 274 (6th Cir. 1998) ...............................................................2

Russ Berrie & Co., Inc. v. Jerry Elsner Co., Inc.,
  482 F.Supp 980 (S.D.N.Y. 1980)........................................................19

Sid and Marty Krofft Television v. McDonald's Corp.,
  562 F.2d 1157 (9th Cir. 1977) .............................................................5

Three Boys Music Cor. v. Bolton,
  212 F.3d 477 (9th Cir. 2000) ...............................................................5

**STATUTES**

17 U.S.C. §102(b)...................................................................................7

**OTHER AUTHORITIES**

Federal Rules of Civil Procedure 56(b) ..................................................1

## STATEMENT OF THE ISSUES

I.    WHERE GEMMY INDUSTRIES CORPORATION CREATED MANY OF THE ELEMENTS FOR WHICH IT IS NOW ACCUSED OF INFRINGING PRIOR TO WINFIELD'S COPYRIGHT REGISTRATION, CAN THERE BE COPYRIGHT INFRINGEMENT?

Defendant Gemmy Industries answers      "No."


II.   HAS GEMMY INDUSTRIES CORPORATION INFRINGED ANY PROTECTABLE ELEMENT OF WINFIELD'S COPYRIGHT IN A TWO-DIMENSIONAL PRINTED PATTERN WITH ITS CRASHING WITCH PRODUCT?

Defendant Gemmy Industries answers      "No."

## I.   INTRODUCTION

Defendant, Gemmy Industries Corporation (hereafter "Gemmy"), moves for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(b) on the grounds that there is no genuine issue as to any material fact. Defendant is entitled to judgment in its favor as a matter of law.

## II.   PROCEDURAL BACKGROUND

Plaintiff, The Winfield Collection, LTD (hereafter "Winfield"), filed a Complaint on May 21, 2002, alleging that Gemmy infringed Winfield's copyright on a printed pattern (a printed work of art). The pattern is used to make a witch out of plywood that looks like it has smashed into an object. A copy of the copyrighted printed pattern is attached as Appendix A.

Gemmy has filed an Answer denying the material allegations of Winfield's Complaint. This Motion for Summary Judgment is based upon the simple and undisputed fact that Gemmy independently created and produced its artistic expression of a witch smashing into a tree[1] without copying Winfield's copyrighted printed pattern. Furthermore, a cursory review of Winfield's copyrighted pattern and Gemmy's artistic creation reveals that there is no substantial similarity of any protectable expression. The only "similarity" between Winfield's copyrighted pattern and Gemmy's crashing witch is the idea of a witch crashing into a tree. But, ideas are not protectable under copyright law. Therefore, Gemmy cannot, as a matter of law, be held to have infringed any protectable element of Winfield's copyrighted printed pattern.

Winfield has sued several manufacturers of witch products or patterns that have only the idea of a witch crashing in common. Some of these designs are shown in Appendix B. It is readily apparent from a cursory view of these various obviously differing products, that Winfield is attempting to protect the broad concept of a witch crashing into an object -- an idea that it did not even originate. In its response to various Gemmy Interrogatories, Winfield is only able to

---

[1] While pictures of Gemmy's product are reproduced below, Gemmy's witch will be produced to Chambers so that the proper comparison can be made, i.e., between Winfield's copyrighted pattern (Appendix A) and Gemmy's product.

articulate and assert its position of copyright infringement in such broad and vague terms that it cannot even meet the first step of the test of controlling Sixth Circuit authority. Winfield can identify no elements of its work to consider in determining the scope of its copyright protection or infringement, as will be explained hereafter.

## III.   LEGAL STANDARD

In order for Winfield to prevail on its claim of copyright infringement, it must prove ownership of a copyright in its pattern for "Witch Crash" and copying by Gemmy. Copying does not have to be proven by direct evidence, but is often shown by circumstantial evidence of access by Gemmy to the copyrighted work and substantial similarities between the copyrighted pattern and Gemmy's work.

The Sixth Circuit has adopted a two-step approach for determining "substantial similarity" which includes:   (1) identifying which aspects of the artist's work, if any, are protectable by copyright; and (2) determining whether the allegedly infringing work is "substantially similar" to the protectable elements of the artist's work. Kohus v. Mariol, 328 F.3d 848, 855 (6th Cir. 2003).

Copyrights do not protect ideas. Mazer v. Stein, 347 U.S. 201 (1954). It is also important to note that a copyright in a pattern does not give Winfield any protectable interest in the useful article depicted in that pattern. Baker v. Seldon, 101 U.S. 99 (1879). See also, Robert R. Jones Assoc., Inc. v. Nino Homes, 858 F.2d 274, 280 (6th Cir. 1998) ("Although the plaintiff may have a valid copyright in the architectural plan that served as the basis for its uniquely designed home, that copyright protection simply does not extend to the design or the house itself absent a design patent." [citation omitted]) Any product made from the pattern would constitute a derivative work. In order to infringe a derivative work, a separate copyright registration must be obtained on the derivative work. Murray Hill Publications, Inc. v. ABC Communications, Inc., 264 F.3d 622, 632 (6th Cir. 2001). Here, as stated in the Copyright Registration, the registration is limited to two-dimensional artwork including a photograph and

2

text. The registration is not for a three-dimensional structure. Thus, any comparison must be based on the similarity of the copyrighted pattern and Gemmy's design.

### A.   FACTUAL SUMMARY

The facts pertaining to each of the material elements of Winfield's claim -- ownership, access, substantial similarity, and independent creation are discussed below.

### 1.   Ownership Of Copyright

For purposes of this Motion, Gemmy does not dispute Winfield's averment in its Complaint that it owns a copyright "for a pattern; that it has complied with all statutory formalities; and that its work was first published in June 10, 1996."

This does not mean that Gemmy concedes ownership of many of the elements of Winfield's copyright on the pattern for which it claims copyright protection. As will be seen, ideas, antecedent material, *scenes a faire*, and functionality are all subject matter for which the copyright law provides no rights of ownership.

### 2.   Access

In its Complaint, Winfield merely alleges access by way of the work being available on the internet. But, the undisputed testimony of Gemmy was that Gemmy did not have actual access to Winfield's copyrighted pattern, and that Gemmy had never before seen a crashing witch design (Flaherty Dep. at 16-17, Appendix C).

### 3.   Similarity - Or Lack Thereof

All of the elements of Winfield's work for which Winfield indicates the accused products are similar, are either unprotectable ideas, not original creative works of Winfield (i.e., the asserted elements are contained in preexisting works), are dictated by *scenes a faire* or are functional, and, therefore, are not copyright protectable. As for most of the elements for which Winfield claims similarity, the elements were found in Gemmy's prior witch designs and are, therefore, not original to Winfield. With respect to Winfield's pattern for its witch and Gemmy's

3

witch crash product, the only similarity is the idea of a witch crashing into a tree, and, of course, ideas are not protectable under the copyright laws.

### 4.   Independent Creation

In 1994, Gemmy Industries Corporation originally created a witch ("Hanging Witch") made with a three-dimensional plastic mold injection elements including hands, boots and a face. (Appendix D). The witch also included a cape and a broom. The original Gemmy witch was designed to be seen from front, sides, and rear.

Prior to the development of its crashing witch, Gemmy was asked by a customer if Gemmy could produce a crashing witch by crashing its previous witch design into a tree. (Flaherty Dep. at 16; App. C). In response to the request from that customer, in 1998 Gemmy independently created an adaptation of its original 1994 work to produce a witch that has crashed into a tree. Gemmy made three basic changes to its original 1994 Hanging Witch. The adapted work is intended to be viewed primarily from the rear and sides, and not from the front. The adaptations: (1) added straps to its original work for holding the witch to a tree, a functional consideration (Flaherty Dep. at 19-20; App. C); (2) replaced the face from its original work with a fabric covered disc because the face could no longer be seen from the front when the witch was strapped to a tree, a functional consideration; and (3) removed the portion of the broom that extended forwardly of the witch. In all other pertinent respects, the features of Gemmy's 1994 work remained the same and are embodied in the 1998 adaptation known as Gemmy's "Tree Trunk Witch."

### IV.   SUMMARY JUDGMENT IS PROPER IN THE CONTEXT OF A COPYRIGHT CLAIM WHEN THERE IS NO DIRECT EVIDENCE OF COPYING, NO EVIDENCE OF ACCESS AND NO STRIKING SIMILARITY BETWEEN THE TWO WORKS

Absent direct evidence of copying, usually in the form of an admission by a defendant, proof of access is an essential element of a plaintiff's case. A principal founded upon the general rule that there could be no copyright infringement where the defendant's work was

independently created, regardless of how similar the two works may appear. <u>Granite Corp. v. United Artist Corp.</u>, 532 F.2d 718, 720 (9th Cir. 1976).

Some courts have defined access as the actual reading, viewing or knowledge of a plaintiff's work by the person who created a defendant's work. <u>Bradbury v. Columbia Broadcasting Systems, Inc.</u>, 287 F.2d 478, 479 (9th Cir. 1961). Other courts have defined access less restrictively as "reasonable opportunity to view" the plaintiff's work. <u>Sid and Marty Krofft Television v. McDonald's Corp.</u>, 562 F.2d 1157 (9th Cir. 1977). Under any test, Gemmy simply did not have access prior to the creation of its work. Winfield concedes that it created its work on June 10, 1996. (App. A)  Winfield only asserts in its Complaint that Gemmy had access by virtue of Winfield's work being available on the internet.  This is only the first of Winfield's attempts to misdirect attention in the hopes of expanding its copyright.  What is shown on the internet is not the copyrighted pattern.  It is a picture.  If Winfield wanted to copyright the derivative sculpture, it should have done so.

Additionally, this evidence is not sufficient to establish access.  There is no evidence that Winfield's printed pattern was available for viewing on the internet; no evidence that those persons that created Gemmy's 1998 adaptation of its 1994 work visited Winfield's internet site, printed Winfield's pattern from the site, or otherwise made a copy of Winfield's printed pattern. Indeed, the evidence is to the contrary.

Reasonable opportunity as used by the courts does not include any "bare possibility," in the sense that anything is possible. <u>Three Boys Music Corp. v. Bolton</u>, 212 F.3d 477, 482 (9th Cir. 2000); See also, <u>Jorgensen v. Epic/Sony Records</u>, 64 U.S.P.Q.2d 1208, 2002 WL 31119377 (S.D.N.Y. 2002)  Access may not be inferred through mere speculation or conjecture, and a motion for summary judgment may be proper in such a case. <u>Three Boys Music</u>, 212 F.3d at 482. See also, <u>Glanzmann v. King</u>, 1988 WL 212507 (E.D.Mich. 1988).  Defendant has found no cases supporting a finding of copying where access was based only on internet activity

without more evidence that the defendant either accessed the information or otherwise knew of the plaintiff's work.

In this case, Winfield claims similarity based *inter alia* on the hand and boot configurations of Gemmy's witch. Also, Winfield bases its claim of substantial similarity on the cape and hat configurations. But, with regard to these elements, it was impossible for Gemmy to have had access to Winfield's pattern created in 1996. These elements were created by Gemmy at least as early as 1994 in connection with its Hanging Witch design. (App. D, See also, Flaherty Dep. at 16-20, App. C). Thus, Gemmy is entitled to summary judgment on the basis that there was no possibility of it having gained access with respect to practically all of the asserted elements of the work in question.

## V.   SUMMARY JUDGMENT IN PROPER IN THE CONTEXT OF A COPYRIGHT CLAIM WHEN THE COURT VIEWS THE REGISTERED WORK WITH THE DEFENDANT'S WORK AND CONCLUDES THAT THERE IS NOT SUFFICIENT SIMILARITY TO WARRANT A FINDING OF INFRINGEMENT

It is well established by case authority that summary judgment is proper for this position of a copyright infringement action. It is permissible for a court to compare only the registered work before it with the defendant's work and declare that no infringement has occurred for the reasons, among others, that there is no substantial similarity between the works and/or the elements allegedly copied are not subject to copyright protection. The courts are empowered to bring to a conclusion before trial, claims which, by their very nature, lack merit as in the present case.

As previously noted, the Sixth Circuit in Kohus, supra, adopted a two-step approach for determining substantial similarity. The first step requires identifying which aspects of the artist's work, if any, are protectable by copyright; and the second involves determining whether the allegedly infringing work is "substantially similar" to the protectable elements of the artist's work. Kohus v. Mariol, 328 F.3d at 855. The Kohus court stated that the essence of the first step is to filter out the unoriginal, unprotectable elements -- elements that were not independently

created by the author and that possess no minimal degree of creativity through a variety of analysis. Kohus v. Mariol, 328 F.3d at 855. The court explained that it is axiomatic, to begin with, that mere abstract ideas are not protectable, but the expression of that idea is, citing Mazer v. Stein, 347 U.S. 201 (1954) ("Unlike a patent, a copyright gives no exclusive right to the art disclosed; protection is given only to the expression of the idea - not the idea itself."); 17 U.S.C. §102(b) ("In no case does copyright protection for an original work of authorship extend to any idea.").

The Kohus court also provided additional guidance explaining that, in the appropriate case, like this one, where functional objects are involved rather than creative work, it is necessary to eliminate those elements dictated by efficiency. The court further explained that to this end, the merger doctrine establishes that, "when there is essentially only one way to express an idea, the idea and its expression are inseparable (i.e., they merge,) and copyright is no bar to copying the expression." Kohus v. Mariol, 328 F.3d at 856. (citation omitted). The court also provided additional guidance indicating that it is also important to filter out "those elements that follow naturally from the work theme rather than from the author's creativity." Kohus v. Mariol, 328 F.3d at 856. These are called scenes a faire.

Practically all of the elements of work asserted by Winfield are embodied in Gemmy's 1994 Hanging Witch. A copyright carries with it very limited protection - protection only against others copying the thing copyrighted. In this case, the thing copyrighted is the printed material for the pattern. Winfield is entitled to prevent others from copying its copyrighted pattern for making a witch out of plywood -- nothing more.

## A.   NO PROTECTABLE ELEMENTS OF WORKS AS ASSERTED BY PLAINTIFF

### 1.   Applying The First Step Of Kohus

Gemmy's Interrogatory No. 6 asked Winfield to "identify the elements...Plaintiff deems as original and protectable." In its response to the Interrogatory, Winfield merely asserts, "The

7

entire work." (Appendix E).  By making this vague response, even though invited to correct the deficiency   (Appendix F), Winfield is now precluded from taking any other position. Respectfully, Winfield's response to this Interrogatory fails to identify any single element in its pattern that is original and protectable under Kohus.  Winfield cannot meet its burden and summary judgment in favor of Gemmy is warranted for this reason alone.

Nonetheless, Appendix G contains a list of "elements" that Winfield considers to be similar.  Analyzing each of these elements individually shows they are not original to Winfield nor are they similar to Gemmy's crashing witch.  Further, this list is misleading.  The list was authored by Winfield and attached as Exhibit A to its response to Gemmy Interrogatory No. 7. (See, App. E attached hereto)  This list is based on an unprotected derivative three-dimensional work.  It is not based on the copyrighted printed pattern.  So, any analysis based on Winfield's position is just legally wrong.  Winfield is simply trying to extend its copyright in a two-dimensional pattern to cover a three-dimensional structure.   As stated above, this is impermissible.  Nonetheless, even if Winfield's position is adopted, for the reasons set forth below, there is no infringement.  It is noted that a summary is attached as App. G.  Appendix G summarizes how the claimed elements of Winfield are not original to Winfield.

   a.   **Artistic Expression Of A Witch That Has Flown
        Astray And Then Smashed Into An Object**

With respect to this element identified and asserted by Winfield, this is an articulation of an idea and not the description of features of an artistic expression identifying a creative work that originated with Winfield. See, e.g., Mattel, Inc. v. Azrak-Hamway Int'l, Inc., 724 F.2d 357, 360 (2nd Cir. 1983).  Winfield's counsel acknowledges this is an idea.  At 15 of the Flaherty Deposition (App. C), Winfield's counsel asked:

> Q.   Now in this case, you didn't come up with the new idea;
>      am I correct?
> A.   The new idea of a tree trunk witch?
> Q.   Right.
>              (emphasis added)

8

Consistent with counsel's acknowledgement, the idea of a witch crashing into an object is simply old. This idea was shown in an October 12, 1995 picture printed in the Kansas City, Kansas newspaper, The Kansas City Star., as reproduced below. (Appendix J)

This picture and its caption appeared approximately one year prior to Winfield's claimed creation. Simply put, the idea of a witch crashing into an object is an unprotectable idea that was developed before Winfield's claimed creation.

The same idea is as illustrated in frames of a 1986 Broom Hilda video cartoon shown in Appendix H attached, in which Broom Hilda flies astray and into a tree. (The video, "Fabulous Funnies Presents Broom Hilda In 'Flying High'"; was produced as GEM0056 and not attached hereto) Similarly, in the 1973 book by Russell Myers, creator of Broom Hilda, entitled "...I Love You, Broom Hilda," at GEM0066, Broom Hilda crashes into another object, here a rock. (GEM0062-GEM0066; Appendix I).

Therefore, to the extent that this element of work identified by Winfield is not an idea, it is not protectable by Winfield because it was not original to Winfield.

**b.    Face Hidden Element**

With respect to this element identified and asserted by Winfield, this feature is: (1) not original to Winfield; (2) dictated by *scenes a faire*; and (3) dictated by functionality.

9

That a face hidden when a witch crashes into a tree is not original to Winfield is plainly shown in the 1995 The Kansas City Star. picture above. Similarly, the 1973 Broom Hilda cartoon (App. I), shows the face of Broom Hilda hidden as she crashes into the rock.

Additionally, functional considerations dictate the hiding of the face. As indicated earlier, Gemmy adapted their original 1994 work into a witch that has crashed into a tree. One of the adaptations was to replace the face of the original Hanging Witch with a fabric covered disc because it was no longer needed. When the witch crashes into the tree, the scene dictates the removal of a face as simply not being required to express the concept of the witch crashing into the tree. Thus, it is the functional consideration of not needing the face molding that dictates this change. Kohus v. Mariol, 328 F.3d at 856. Therefore, the need and function of the face was eliminated out of efficiency. Such functional elements cannot be protected under copyrights and, therefore, Gemmy cannot be liable for infringing the same.

Finally, the *scenes a faire* dictated removal or omission of a face in a witch crashed into the tree. That is, the hidden face followed naturally from the crash theme. Kohus v. Mariol, 328 F.3d at 856.

### c.   Flowing Cape Element

Winfield's copyrighted pattern fails to depict any cape. Thus, Winfield's copyrighted work does not include any flowing cape. Nonetheless, with respect to this element identified and asserted by Winfield, the flowing cape element lacks any detail sufficient to associate even a minimal degree of artistic creativity on the part of Winfield, and furthermore, is old. No details regarding the flowing cape element are given by Winfield to distinguish it over the idea of a flowing cape used in a myriad of different fictional characters including witches such as the Wicked Witch of the West in the 1939 movie The Wizard Of Oz as shown App. H. Additionally, Gemmy's prior 1994 witch (App. D) includes a flowing cape. Winfield cannot be serious that any depiction of a witch with a flowing cape is protectable by Winfield's copyright on a printed pattern.

#### d.    Long Flowing Hair Element

With respect to this element identified and asserted by Winfield, Winfield's copyrighted pattern does not show any hair. It is not an element of the copyrighted pattern. Nonetheless, to the extent it is even mentioned, the hair is to be a "cotton mop head." (App. A). Once again, the use of a cotton mop head for hair on a crashing witch is not original to Winfield. It is shown in the 1995 The Kansas City Star. picture.

#### e.    Pointed Black Hat Element

With respect to this element identified and asserted by Winfield, again, this is another element that lacks specific detail sufficient to distinguish it from antecedent works such as the hat of the Wicked Witch of the West, the Broom Hilda video or cartoon and The Kansas City Star. picture. (Apps. H, I, J) Similarly, Gemmy's own 1994 witch included a pointed hat. (App. D). In fact, the "pointed black hat" is an idea that springs to mind when anyone thinks of a witch. Winfield's asserted claim lacks any amount of credibility. The "pointed black hat" is simply not protectable by Winfield through its copyright on a printed pattern for making a witch out of plywood.

#### f.    Arms And Legs Spread Apart Element

With respect to this element identified and asserted by Winfield, it too lacks any specificity sufficient to distinguish it over antecedent works and, therefore, is not protectable by Winfield's copyrighted printed pattern. Additionally, it is not an element of its copyrighted pattern. The printed pattern is a pattern showing a single arm and a single leg. No spread apart arms or legs exist in the pattern. Even so, this idea was not originated by Winfield as shown in the 1995 The Kansas City Star. picture. Further, both the video cartoon of Broom Hilda smashing into a tree and the cartoon of Broom Hilda smashing into a rock show Broom Hilda's arms and legs spread apart. (Apps. H, I, J)

Furthermore, since the witch already has her legs wrapped around a broomstick when she files on it (See, Gemmy's 1994 Hanging Witch), it would be a naturally flowing scenario that

11

when she crashes into the tree, her arms and legs would spread apart. Finally, the arms and legs being spread apart is functional and, therefore, not protectable. In Gemmy's design, straps are connected to the arms and legs to fasten them to the tree. Accordingly, the arms and legs must be spread apart around the tree to secure the witch to the tree.

### g. Portion Of Broom Sticking Out Of The Back Of The Witch Under Cape Element

Again, this is not an element of the copyrighted pattern. With respect to this element identified and asserted by Winfield, this element is dictated by *scenes a faire*, lacks any identified creativity on the part of Winfield, and is old. Gemmy's 1994 hanging witch has a portion of the broom sticking out the back. Gemmy did not copy this element, it designed it before Winfield conceived its pattern.

### h. Striped Socks Element

Winfield admits that Gemmy's device differs in this respect. This is another indication that Gemmy did not copy any pattern of Winfield.

### i. Hair/Hat Hides Back Of Head Element

Once again, this is not an element of the copyrighted pattern. Even so, with respect to this element identified and asserted by Winfield, it lacks any specific detail sufficient to identify any creativity whatsoever that would distinguish Winfield's work from preexisting work. Again, the prior 1994 Gemmy witch includes this feature. Further reference is made to the Broom Hilda caricature and The Kansas City Star. picture discussed above, both of which show a hat and hair which hides the back of the head. Furthermore, any child who has ever watched The Wizard Of Oz remembers the large brim hat and hair of the Wicked Witch of the West hiding the back of her head. (App. H)

### j. Cape Hiding Body Element

Yet again, this is not an element of the copyrighted pattern. Winfield's pattern does not include a cape. Even so, reference is again made to the Wicked Witch of the West who had a

cape that hid a portion of her body. This element is also present in Gemmy's 1994 witch. Accordingly, Gemmy did not copy this feature. Gemmy had it before Winfield created its pattern.

### k.    Boots Element

With respect to this element identified and asserted by Winfield, it fails to identify any feature of creative character distinguishable from preexisting works. Witches wear boots. Reference is again made to the 1986 Broom Hilda video and the 1973 Broom Hilda cartoon both which show Broom Hilda with boots on. (Apps. H, I). Similarly, Gemmy's 1994 witch includes the identical boots Winfield now accuses of infringing. Accordingly, Gemmy did not copy this feature, it had it before Winfield created its pattern, and this element cannot be protected by Winfield's printed pattern.

### l.    Hat Bent Element

With respect to this element identified and asserted by Winfield, it also lacks any detail with respect to any creativity on the part of Winfield that would distinguish a hat bent from antecedent works. Again, reference is made to the Broom Hilda cartoons which show a witch with a hat that is bent. Additionally, the 1995 The Kansas City Star. picture includes a witch with a bent hat. (Apps. H, I, J)  This element is not protected by Winfield's copyright on a printed pattern.

### m.    Spread Of The Legs Element

With respect to this element identified and asserted by Winfield, it is not part of the copyrighted pattern. Further, it is redundant of a prior element of work (See, Section f. above, Arms And Legs Spread Apart).

### n.    Fingers Spread Out Element

With respect to this element identified and asserted by Winfield, it too, lacks sufficient detail to identify any creativity on the part of Winfield that would distinguish its work from antecedent works. Broom Hilda above is shown with her fingers spread apart. Additionally,

Gemmy's 1994 Witch designs included the same hand moldings. Gemmy had its hand moldings prior to Winfield's creation of its pattern. Accordingly, it could not be copied.

### o.    Belt Buckle On The Shoes Element

Winfield admits that Gemmy's device differs in this respect. This is another indication that Gemmy did not copy any pattern of Winfield.

### p.    Broom Substantially Perpendicular Element

This element is not an element of the copyrighted work. The pattern does not depict a broom substantially perpendicular. With respect to this element identified and asserted by Winfield, again, this is another element dictated by *scenes a faire* in which witches are known to ride a broom by straddling the broom with their legs. This element is also old and known. Gemmy had it with its 1994 witch. See, also, the 1995 The Kansas City Star. picture.

### q.    3-Dimensional Element

This is not an element of Winfield's copyrighted pattern. Winfield copyrighted a two-dimensional pattern. (App. A) Even so, three-dimensional witch figures are old. Gemmy had them in 1994 and they are shown in the 1995 The Kansas City Star. picture. Winfield simply cannot be serious in asserting that it has copyright protection to any three-dimensional expression of a witch crashing into an object where its own copyright registration is limited to a two-dimensional pattern.

### r.    Line-by-Line Instructions
### s.    Diagrams On How To Put It Together
### t.    3-D Diagrams
### u.    Letter Call-outs For Part

Winfield admits that Gemmy's device differs in these respects. This is another indication that Gemmy did not copy any pattern of Winfield.

**2. Applying The Second Step Of Kohus**

    **a. Lack Of Similarity In The Protectable Elements Of Work - Substantial Dissimilarities**

Additionally, the dissimilarities between the artistic expressions of each parties are so substantial that Gemmy's work does not constitute copyright infringement of Winfield's printed pattern for making a witch out of plywood. For example, Winfield mischaracterizes an element of its work as a "hidden face" because, in reality, there is absolutely no face at all in its printed pattern of any structure made therefrom. (App. A) In contrast, Gemmy's work does have a solid black round disc structure that functions as a "hidden" face.



Winfield's copyrighted pattern fails to depict any cape. Thus, Winfield's copyrighted work does not include any flowing cape. To the extent a cape is even mentioned in Winfield's copyrighted pattern, the copyrighted work calls for a "Black 30 gallon trash bag." (App. A) No trash bag or anything similar is found in Gemmy's design. Further, Gemmy uses a fabric cape that is not at all similar to a trash bag.

There is no similarity with Gemmy's design with respect to the hair. Winfield's pattern does not show any hair. It is mentioned to be a cotton mop head (App. A) --Gemmy does not use a cotton mop head as hair. Rather, Gemmy's product uses silk-like hair, that is substantially more realistic than a cotton mop head.

Winfield's hand element is flat, with all of the fingers in the same plane. Features such as nails and joints are to be painted on the plywood parts, and only for the back of the hand, as shown. In contrast, Gemmy's work includes truly three-dimensional hands molded from plastic

having features such as nails, joints, creases, wrinkles and the like molded onto the surfaces of the hands.  Both the palm and the back of the hand are visible and include much more surface detail.  The fingers are not in the same plane, but are positioned to grasp a broom, as shown below.



Winfield's boot is flat, with a buckle and a large heel in its printed pattern as shown, and the plywood parts made there from can only be seen from the exterior side of the boot.  In contrast, Gemmy's is truly a three-dimensional boot molded from plastic visible features such as creases and folds formed on interior and exterior sides, top and bottom of the boot.  No buckle or large heel similar to Winfield's are present, as shown below.



Winfield's hat parts are flat, rigid, slotted and black as shown on the left below.  The hat to be constructed has intersecting flat walls.   In contrast, Gemmy's hat is purple, soft, a truly three-dimensional cylinder made from fabric and foam, and lacks a slot and intersecting walls.



Gemmy's Tree Trunk Witch (shown on the right below) with molded elements and arms, legs and body made of foam, wire and fabric fails to resemble anything substantially similar to Winfield's plain illustration in the printed pattern of the assembled pieces of plywood (shown on the left below).



In addition to the "elements" cited above, there are numerous other differences which plainly show the lack of similarity between Winfield's pattern and Gemmy's witch product.  For example, Winfield's pattern includes a single piece for the body and a portoin of the hat. Gemmy's product, in contrast, has a separate body separated and spaced from the hat by the

fabric disc face discussed above.  Further, Winfield's body extends in a single-plane that is parallel with the radial direction of the object into which it is intended to crash.  Gemmy's body portion, in contrast, extends primarily in the opposite direction, that is, perpendicular to the radial direction.  Further, Gemmy's product includes a pair of spacer ribs extending outwardly from the body to provide its three-dimensional look.  Winfield's pattern shows no such device.

Winfield's pattern for its broom shows a notched handle on the broom.  In contrast, Gemmy's broom handle has a flat end and is not notched.  Winfield's pattern shows the leg and boot portion to be made as a single piece of wood.  Gemmy's product, in contrast, includes a leg portion that is separate from the boot.

Winfield's pattern also shows that the leg portion is for attachment to the body portion at a point above the base of the body to extend outwardly there from.  In contrast, Gemmy's legs extend from the bottom of the body portion, not the side thereof as is in Winfield's design.

Winfield's arms are to be attached to the major surface of the body whereas in Gemmy's design, the arms extend from a minor side surface.

Winfield's pattern also requires that the arms and hands be made as a single piece.  In contrast, Gemmy's hand molding is separate from the arm and is attached thereto.

Further, Winfield's pattern includes only one pattern for a hand.  Accordingly, both hands have the identical configuration.  In contrast, Gemmy's molding includes hands that are different from one another.

Winfield's pattern shows blocks for interconnecting the various components.  In contrast, Gemmy's device has no such blocks.

Numerous other differences are readily apparent from a simple comparison of the copyrighted pattern and Gemmy's witch design.  Some of these, such as the line-by-line instructions, diagrams on how to put the device together, 3D diagrams, and letter call-out parts are admitted by Winfield not to be present in Gemmy's product.

Both Winfield's copyrighted work and Gemmy's witch adopt the unprotectable idea of a witch crashing into a tree. This alone cannot constitute copyright infringement. Mattel, 724 F.2d at 360. Winfield's claims for infringement include the broad similar ideas of boots, capes that cover a body, hair and a pointed hat that covers the head, and a perpendicular broomstick. But these ideas are common to most all witches. Similarly, the specific configuration of the hands, boots, cape and hat of Gemmy's design were on Gemmy's products that predated Winfield's copyrighted pattern. Accordingly, Gemmy's design cannot be substantially similar to Winfield's copyrighted pattern based on these elements. Russ Berrie & Co., Inc. v. Jerry Elsner Co., Inc., 482 F.Supp. 980, 986 (S.D.N.Y. 1980).

## VI.    CONCLUSION AS TO COPYRIGHT INFRINGEMENT

Prior access by Gemmy of practically all of the elements of Winfield's copyrighted work was impossible because Gemmy independently created all of the elements of its product in 1994 prior to Winfield's June 10, 1996 conceded creation date. All of the "elements of work" as articulated and asserted by Winfield are either ideas or are so broad and generic, lacking any specificity sufficient to establish any creativity that can be contributed to Winfield and, therefore, are not protectable by Winfield. Substantial dissimilarities exist between Winfield's copyrighted pattern, in the form of printed material for making a witch out of plywood, and Gemmy's adaptation of its original 1994 Hanging Witch having three-dimensional molded artistic features.

The numerous dissimilarities between Gemmy's witch and Winfield's copyrighted pattern plainly indicate that there is no copyright infringement.

**VII.    CONCLUSION**

Based on the foregoing, it is plain that Gemmy's three-dimensional witch does not infringe Winfield's copyright in its two-dimensional pattern.

Gemmy's Motion should be granted.

Respectfully submitted,

by

RICHARD W. HOFFMANN (P42352)          JAMES G. FLAHERTY
JOSEPH G. BURGESS (P41621)               Anderson Byrd Richeson Flaherty & Henrichs
Warn, Burgess & Hoffmann, PC              216 S. Hickory, PO Box 17
691 North Squirrel Road, Suite 140          Ottawa, Kansas  66067
Auburn Hills, Michigan  48326              Telephone:  785-242-1234
Telephone:  248-364-4300                   Facsimile:  785-242-1279
Facsimile:  248-364-4285

*Attorneys for Defendant-Counter Plaintiff Gemmy Industries Corporation*

Dated:  August 29, 2003

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

# SEE CASE FILE FOR ADDITIONAL DOCUMENTS OR PAGES THAT WERE NOT SCANNED